IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARY ANNE KIRGAN, et al.   *

   Plaintiffs,   *

                          Civil Action No. RDB-19-0199

v.   *

MANUFACTURERS AND TRADERS   *
TRUST COMPANY
                                   *

   Defendant.
*   *   *   *   *   *   *   *   *   *   *   *   *   *

## **MEMORANDUM OPINION**

Plaintiffs, Mary Anne Kirgan and Robert S. Kirgan ("the Kirgans"), filed a Complaint on January 22, 2019, seeking a Declaratory Judgment, under 28 U.S.C. §§ 2201, *et seq.*, that would require Defendant, Manufacturers and Traders Trust Company, doing business as M&T Bank ("M&T"), to release funds from the Clarence Manger and Audrey Cordero Plitt Trust ("the Trust") to pay attorneys' fees incurred by the Kirgans acting as trustees with respect to administration of the Trust. (Compl., ECF No. 1.) All parties are successor trustees of the Trust, which is a charitable trust created under the will of Clarence Manger Plitt. M&T has filed a counterclaim seeking a judgment declaring that M&T is entitled to reimbursement of attorneys' fees from the Trust. (Countercl., ECF No. 5.) Now pending before this Court are the parties' Cross-Motions for Summary Judgment (ECF Nos. 10, 11).[1] For the reasons that follow, this Court shall GRANT IN PART and DENY IN PART The Kirgans' Motion for Summary Judgment (ECF No. 10) and shall GRANT IN PART and DENY IN PART

---

[1]      Also pending is the related Plaintiffs' Submission of Attorneys' Fees Invoices (ECF No. 17), which was filed incorrectly as a motion. Its disposition is tied to The Kirgans' Motion for Summary Judgment (ECF No. 10).

Defendant's Cross-Motion for Summary Judgment (ECF No. 11). Specifically, this Court GRANTS the Defendant's motion in its entirety with respect to fees and costs, but DENIES its motion opposing any and all fees to be accorded to the Plaintiffs. Accordingly, this Court shall direct payment by the Trust of fees and costs incurred by the Kirgans in the amount of $756,348.79 and shall direct payment by the Trust of all fees and costs incurred by M&T amounting to $940,278.90.

## BACKGROUND

### I. The Trust and Trustees

In 1976, a testamentary charitable trust ("the Trust") was created under Maryland law pursuant to Clarence Plitt's Will. (Compl. ¶ 7, ECF No. 1.) The Trust's purpose is to donate funds to educational institutions that agree to use the funds for educational loans to needy students. (*Id.*) The Trust has assets of about $15 million. (Countercl. ¶ 2, ECF No. 5.)

The Will designated Mary E. McC. Kirgan ("Mary Kirgin") as the Trust's original individual trustee and First National Bank of Maryland as the original corporate trustee. (Compl. ¶¶ 8-9, ECF No. 1.) Mary Kirgan was Clarence Plitt's long-time partner, and he raised Mary Kirgan's children, Mary Anne Kirgan and Robert Kirgan, from the time they were ages five and ten respectively. (Mot. Ex. K, Va. Mem. Op. 2-3, ECF No. 10-13.) After Clarence Plitt's death, Mary Kirgan contested the Will, and the Circuit Court for Baltimore City issued an Order in December 1985 that included the following language:

> ORDERED and DECLARED that the individual Trustees acting jointly pursuant to Item Four L. of the Last Will and Testament of Clarence M. Plitt do not have the power to remove the originally named corporate Trustee, except for cause;

2

(Mot. Ex. B, 1985 Order 2, ECF No. 10-4; Mot. Ex. K, Va. Mem. Op. 3, ECF No. 10-13.) The Will provided that after Mary Kirgan's death, she be succeeded by two individual co-trustees. (*Id.* at 3.) Mary Kirgan named Mary Anne and Robert Kirgan as her successor individual co-trustees of the Trust. (*Id.*)

The First National Bank of Maryland became the FMB Bank in 1998 and Allfirst Bank in 1999. (Compl. ¶ 12, ECF No. 1.) In 2003, M&T acquired Allfirst Bank through a merger, becoming the successor fiduciary to Allfirst Trust Company, N.A. (*Id.* at ¶ 13.) Mary Kirgan was given notice of the merger and advised of the date by which she must file a complaint if she objected. (*Id.* ¶ 14.) Mary Kirgan had concerns about M&T, so through her counsel, she negotiated with Kenneth Hornstein ("Hornstein"), a Vice President at M&T.[2] (*Id.* at ¶ 15.) Before the objection date had passed, Mary Kirgan, through her counsel, sent a letter to Hornstein stating her conditions for not objecting to M&T acting as the successor fiduciary. (*Id.* at ¶ 15; Mot. Ex. D, ECF No. 10-6.) In return, she received a letter from Susan A. Nachman, Vice President at M&T, stating the bank's agreement. (Compl. ¶ 16; Mot. Ex. E, ECF No. 10-7.) The agreement included:

> ITEM FOUR Paragraph L of the Will ("Paragraph L") grants you, in your capacity as the sole individual co-trustee of the Trust, the power to remove and replace M&T as corporate co-trustee;
>
> . . . .
>
> If a disagreement about the construction of Paragraph L should arise while M&T is serving as co-trustee of the Trust, M&T will join in filing a petition for Will construction and/or reformation seeking relief consistent with the interpretation set forth above,

---

[2]    Hornstein had also been the fiduciary advisor for the Trust at First National Bank of Maryland. (Mot. Ex. K, Va. Mem. Op. 6-7, ECF No. 10-13.)

3

> provided you request such an action (or the successor individual co-trustees jointly request such an action); and,
>
> The expenses for the preparation/filing, etc. of any such petition are payable from the Trust as an administration expense.

(*Id.*) Mary Kirgan submitted a bill for the attorneys' fees she incurred related to the merger negotiations, and it was paid by the Trust. (Compl. ¶ 17, ECF No. 1.)

Mary Kirgan died in 2004, and she was succeeded by her children, Mary Anne Kirgan and Robert S. Kirgan ("the Kirgans") as the Trust's successor individual co-trustees. (*Id.* at ¶¶ 17-18.)

## II. The Dispute & Prior Litigation

In July 2005, the Kirgans requested an opinion from Venable LLP regarding compensation to be paid to the Kirgans by the Trust for performing duties as co-trustees. (Mot. Ex. K, Va. Mem. Op. 11-12, ECF No. 10-13.) Prior to that time, Mary Kirgan had received a total annual compensation of $70,820, and the Kirgans each received compensation of $37,000 in fiscal years 2004 and 2005. (*Id.* at 12.) The Venable Opinion proposed that the Kirgans each receive total compensation of $62,750 and that they increase their level of activity as co-trustees. (*Id.*)[3]

Beginning in 2015, M&T raised concerns that certain sections of the contracts between the Trust and the schools receiving funding violated the Will's intent and needed to be adjusted. (Mot. Ex. K, Va. Mem. Op. 8, ECF No. 10-13.) The concerns were communicated to the Kirgans and various terms were adjusted. (*Id.* at 8-10.) In November 2016, M&T

---

[3] M&T's compensation as the corporate trustee was about $83,000 a year as of November 2018. (Mot. Ex. K, Va. Mem. Op. 12, ECF No. 10-13.)

4

communicated to the Kirgans that it wished to retain someone to give an opinion regarding appropriate trustee compensation, but the Kirgans did not identify anyone to perform the analysis or permit M&T to retain someone to do the analysis. (*Id.* at 13.) On November 16, 2016, the Kirgans notified M&T that they had jointly elected to remove M&T as a successor corporate trustee and replace it with a local bank, Sandy Spring Trust. (Compl. ¶ 20, ECF No. 1; Mot. Ex. H, ECF No. 10-10.) M&T refused to step aside on the basis that it could only be removed for cause. (Compl. ¶ 21, ECF No. 1; Countercl. ¶ 3, ECF No. 5.)

During a negotiation meeting between M&T and the Kirgans on or about March 22, 2017, the Kirgans' counsel notified M&T's counsel that the Kirgans had filed suit on March 21, 2017 in the United States District Court for the Eastern District of Virginia ("the Virginia Complaint"). (Compl. ¶ 22, ECF No. 1; Counterclaim ¶¶ 3-4, ECF No. 5.) The Virginia Complaint, as amended, alleged five counts against M&T: (1) Declaratory Judgment for Plaintiffs Right to change the Corporate Trustee; (2) Removal of M&T Bank as Corporate Trustee; (3) Breach of Contract; (4) Breach of Fiduciary Duty; and (5) Fraud. (Mot. Ex. K, Va. Mem. Op. 1-2, ECF No. 10-13.)

On May 4, 2017, M&T sued the Kirgans in this Court for breach of fiduciary duty and seeking a declaratory judgment that the Kirgans were unreasonably and excessively compensated by the Trust and a declaratory judgment regarding the dispute over the terms of funding contracts. (Compl. ¶ 23, ECF No. 1.) On July 17, 2017, Judge Motz of this Court dismissed M&T's claims pursuant to the first-to-file rule. (*Id.* at 24.) M&T refiled its claims as counterclaims in the Virginia action and also sought removal of the Kirgans as trustees. (*Id.*)

Judge Hilton of the U.S. District Court in Virginia granted summary judgment for M&T on the Kirgans Count III (breach of contract) and Count V (fraud) and also ruled that based on the 1985 Order from the Circuit Court for Baltimore City, M&T could only be removed for cause, which dismissed Count I. (Mot. Ex. K, Va. Mem. Op. 2, ECF No. 10-13.) The case then proceeded to a two-day bench trial on February 21, 2018. (*Id.*) On November 29, 2018, Judge Hilton denied both parties' requests to remove the other as trustee, and ordered that the parties promptly meet and set a schedule for regular meetings for conducting business of the Trust and promptly meet to arrange a study for the proper amount of trustee compensation. (Compl. ¶ 27, ECF No. 1); s*ee also* Order, Civil Action No. 1:17-cv-00327 (E.D. Va Nov. 29, 2018).

On December 13, 2018, the Kirgans filed a motion to compel the release of trust funds to reimburse them for attorneys' fees incurred in the litigation that M&T had refused to pay.[4] (Compl. ¶¶ 31-34, ECF No. 1.) Judge Hilton expressed a preference that the issue be decided by a Maryland court, so the parties agreed that the Kirgans' motion would be withdrawn without prejudice and the instant action would be filed in this Court. (*Id.* at ¶ 34.)

The Kirgans have appealed the decisions of the U.S. District Court for the Eastern District of Virginia to the United States Court of Appeals for the Fourth Circuit.[5] (*Id.* at ¶ 28.)

---

[4] In August 2017, M&T had sought an order from the Virginia court that it did not need to pay the invoices presented. (Mot. Mem. 11, ECF No. 10-1.) M&T's motion was denied. (*Id.*) The Kirgans then asked the Virginia court to order M&T to pay the invoices, but the court deferred the issue until the end of the case. (*Id.*)
[5] Case No. 19-1009.

6

### III. Procedural Setting

The Kirgans filed the subject action in this Court on January 22, 2019. (Compl. ECF No. 1.) They seek a declaratory judgment under 28 U.S.C. § 2201 *et seq.*. declaring that M&T must release funds from the Trust to reimburse their attorneys' fees for the Virginia litigation, the earlier Maryland litigation, and the current appeal that is still ongoing. (*Id.*) In its counterclaim, M&T seeks a judgment declaring that M&T is entitled to reimbursement of attorneys' fees from the Trust that it has incurred in the Virginia litigation, this litigation, and the current Fourth Circuit appeal. (Countercl., ECF No. 5.)

As of January 18, 2019, the Kirgans had submitted copies of invoices to M&T showing a balance for fees of $1,104,491.55, which does not include fees incurred in connection with the instant case or the pending appeal. (Resp. Mem. 10, ECF No. 11-1.) Counsel for M&T sent a letter to the Attorney General of Maryland informing the Attorney General of the circumstances and the Kirgans' request to have the Trust pay their attorneys' fees. (*Id.* (citing Def.'s Ex. 21).) The Attorney General indicated that the fees appear to be excessive but declined to participate in the instant litigation. (*Id.* at 11 (citing Def.'s Ex. 3).) As of December 31, 2018, M&T incurred attorneys' fees of $664,364 and $17,072.93 in costs for work performed in connection with the Virginia litigation. (*Id.*)

The instant case is focused solely on whether attorneys' fees incurred by the Trust's trustees may properly be paid by the Trust. The parties agreed to proceed without discovery and present their cases with cross-motions for summary judgment on an approved expedited briefing schedule. (*See* Order, ECF Nos. 8, 9.) After the motions were fully briefed, this Court held a hearing on May 29, 2019. This Court determined that each party would submit their

7

invoices to this Court for apportionment. An Order was filed setting a briefing schedule for each party to submit their respective attorneys' fees invoices to this Court. (ECF No. 15.) Plaintiffs submitted invoices totaling $1,302,967.14, which includes attorneys' fees of $1,262,600.50 and out-of-pocket costs of $40,366.64. (ECF No. 17.) Defendant's submitted invoices totaling 1910 hours, which includes 1749.7 hours of attorney time (ranging in experience from 1 to 20+ years), 110.6 hours of paralegal team, and 49.7 hours of e-discovery specialist time). (ECF No. 19.) The Kirgans do not object to M&T's invoices. (*See id.*; ECF No. 12.) The invoices for fees total $920,195.50, and the total amount of disbursements is $20,083.37, totaling $940,278.90. (ECF No. 24.)

The Order also required Defendant to file its contentions detailing subject matters found in Plaintiffs' invoices that are and are not attributable to the proper administration of the Trust, Plaintiffs' response to those contentions, and Defendant's Reply. (ECF No. 15.) This Court now issues its decision on the parties' cross-motions and on the apportionment of fees. For the reasons that follow, this Court shall GRANT IN PART and DENY IN PART The Kirgans' Motion for Summary Judgment (ECF No. 10) and shall GRANT IN PART and DENY IN PART Defendant's Cross-Motion for Summary Judgment (ECF No. 11). Specifically, this Court GRANTS the Defendant's motion in its entirety with respect to fees and costs, but DENIES its motion opposing any and all fees to be accorded to the Plaintiffs. Accordingly, this Court shall direct payment by the Trust of fees and costs incurred by the Kirgans in the amount of $756,348.79 and shall direct payment by the Trust of all fees and costs incurred by M&T amounting to $940,278.90.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656-59 (2014).

When both parties file motions for summary judgment, as here, this Court applies the same standard of review to both motions, considering "'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Defenders of Wildlife v. North Carolina Dept. of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)). "[B]y the filing of a motion [for summary judgment,] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (citation omitted); *see also Sherwood v. Washington Post, 871 F.2d 1144, 1148 n.4* (D.C. Cir. 1989) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). "However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "'may be probative of the non-existence of a factual dispute." *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620 (D. Md. 2013) (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)); *Georgia State Conference of NAACP v. Fayette County Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015).

## ANALYSIS

"Maryland has long recognized the general proposition that legal costs are a necessary part of the cost of administering a trust." *Saulsbury v. Denton Nat'l Bank*, 335 A.2d 199, 200 (Md. Ct. Spec. App. 1975). When trustees defend the administration of a trust, it may charge the necessary counsel fees to the trust assets. *Id.* This includes a successful defense by a

trustee against an effort to remove him as trustee. *Id.* at 201. In its explanation, the *Saulsbury* Court stated:

> [T]rustees have no beneficial interest in the trust property. They hold it for the accommodation and benefit of others. If they perform their duties faithfully, and are guilty of no unjust, improper, or oppressive conduct, they ought not in justice and good conscience to be put to any expense out of their own moneys. If, therefore, they are brought before the court without blame on their part, they should be reimbursed all the expenses that they incur, and allowed their costs as between solicitor and client.

*Id.* (quoting 2 Jairus Ware Perry, A Treatise on the Law of Trusts and Trustees § 894 (7th ed. 1929)). The *Saulsbury* Court cited a different treatise for the proposition that if the defense is not successful and is removed, "he must pay his own expenses." *Id.* (quoting George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 809 (2d ed. 1960)). The general rule, therefore, appears to be that a trustee is entitled to attorneys' fees paid from the trust if the trustee successfully defends a removal action.

If a defense is successful in part, and unsuccessful in part, a court should allocate to the trust only the portion or percentage of the fees that it considers, in its discretion, to be fairly attributable to the successful aspects of the defense. *Jacob v. Davis*, 738 A.2d 904, 921, (Md. Ct. Spec. App. 1999).

"The question remains whether the services were beneficial in the preservation of the trust." *Saulsbury*, 335 A.2d at 202 (quoting *Jessup v. Smith*, 119 N.E. 403, 404 (N.Y. 1918)). "If [trustees] are brought before the court without blame on their part, they should be reimbursed all the expenses that they incur, and allowed their costs as between solicitor and client." *Id.* at 201. In *Saulsbury*, the trustee's conduct had been questioned by the beneficiaries, but the

beneficiaries did not pursue the case, so it was never heard on the merits. *Id.* at 203. The court, therefore, did not consider the trustee's conduct as an issue in the case since there had been no final determination as to the alleged misconduct. *Id.* It would be stretching the holding, however, to state, as the Kirgans do, that "[t]here is simply no requirement that trustees must prevail in a case in order to be reasonable in pursuing relief." (Reply 11, ECF No. 12.) Rather, it appears to require an equitable analysis under the facts and circumstances of the case. As this Court stated at the hearing held on May 29, 2019, only those fees properly incurred or reasonable are entitled to reimbursement from the Trust. *See* Mots. Hr'g Tr. at 64:7-68:2. This Court has required both parties to submit their invoices and allowed each party to challenge whether the submitted invoices are fairly attributable to the Trust.

First, this Court has reviewed M&T's invoice submissions. The Kirgans have stated that M&T's fees should be paid and have not objected to M&T's invoice submission. (*See, e.g.*, ECF No. 22 at 8; ECF No. 12 at 18.) This Court finds the requested fees reasonable and appropriately incurred in the administration of the Trust, primarily in successfully defending its position as a Trustee. This Court has allowed the rates as invoiced rather than mandate the Guidelines Regarding Hourly Rates as set forth in Appendix B.3 of the Local Rules of this Court (D. Md. 2018).

Accordingly, this Court shall GRANT IN PART Defendant's Cross-Motion for Summary Judgment (ECF No. 11) as it relates to M&T's request for reimbursement of fees. This Court shall direct payment by the Trust of fees and costs incurred by M&T in the amount of $940,278.90. M&T also moved this Court to deny Plaintiffs' Motion for Summary

Judgment, which this Court does not do, so to that extent, Defendant's Cross Motion for Summary Judgment (ECF No. 11) is also DENIED IN PART.

This Court has performed a detailed analysis of the fees requested by the Kirgans in light of Defendant's objections. As noted at the hearing, some categories of the fees expended by the Kirgans are not appropriately chargeable to the Trust. Specifically, the Trust is not chargeable for fees related to the complaints the Kirgans filed in the Virginia litigation, fees for the work related to the multiple motions for summary judgment filed in the Virginia litigation, fees related to some of the duplicative requests for attorneys' fees, and some of the fees related to the appeal of the Virginia Court's decision to the Fourth Circuit and other fees incurred in the Virginia litigation. This Court has adjusted the Kirgans' fee request as follows:

1. **Virginia Complaints**

This Court has determined that the Kirgans unreasonably initiated the litigation in Virginia for their own self-interest and not for the benefit of the Trust. Further, they were unsuccessful in their efforts to remove M&T as a trustee. Accordingly, none of the fees incurred are reimbursable by the Trust. Therefore, the 101.9 hours invoiced for this work and the invoiced expenses related to this work shall be excluded in its entirety from the calculation of the Kirgans' fees to be paid by the Trust.

2. **Virginia Multiple Motions for Summary Judgment**

This Court has determined that the three motions for summary judgment filed in the Virginia litigation were unreasonable and unsuccessful and are not chargeable to the Trust. Therefore, the 358.5 hours invoiced for this work and the invoiced expenses related to this

work shall be excluded in its entirety from the calculation of the Kirgans' fees to be paid by the Trust.

### 3. Attorneys' Fees Request

During the pendency of the Virginia litigation, Plaintiffs requested the Virginia Court to compel M&T to pay their fees related to that litigation. This Court has determined that the initiation of the litigation and the motions for summary judgment are not chargeable to the Trust, so the request to compel the payment of the related fees, even before the known outcome of the litigation, is also not appropriately chargeable to the Trust. However, fees and expenses incurred in the instant case shall be allowed.

The Plaintiffs' invoices submitted under ECF No. 17, tabs A to O are dated prior to the instant action. This Court performed a detailed review of the line items under ECF No. 17, tabs P to T, and concluded that some of the invoiced items related to the Virginia litigation and appeal, but the remainder shall be allowed. As with M&T's submission, this Court has allowed the lawyers' rates as invoiced rather than mandate the Guidelines Regarding Hourly Rates as set forth in Appendix B.3 of the Local Rules of this Court (D. Md. 2018). Based on the detailed review of the line items under ECF No. 17, tabs P to T, the following shall be allowed, which represents fees and expenses:

- Tab P[6]     $ 29,463.86
- Tab Q[7]     $ 22,141.74

---

[6] M. Nadel 31.2 hours at $940.00. Expenses of $135.86.
[7] Almost all billings were related to the appeal. Allowed M. Nadel 22.0 hours at $940.00; M. Knowles .8 hours at $875.00; T. Harrison .3 hours at $1050.00. Expenses of $446.74.

14

- Tab R[8]  $ 2,508.85

- Tab S[9]  $     0

- Tab T[10]  $ 15,422.64

- Total   $ 69,537.09

### 4. The Appeal and Other Virginia Work

Defendants also challenge the fees related to the Fourth Circuit appeal and some of the hours spent on discovery and the bench trial in the Virginia litigation. (ECF No. 21 at 2 n. 3; 8-9.) To determine a reasonable allowable amount, this Court considered the following:

- Plaintiffs requested total fees of $1,262,600.50, representing 1,716.1 hours;

- Defendants challenged 782.6[11] hours, so 933.5 hours remain unchallenged;

- The 933.5 unchallenged hours represents 54.39% of the total hours;[12]

- $1,262,600.50 multiplied by 54.39% represents $686,811.70 as unchallenged;

- Of the challenged fees, this Court allowed $69,537.09 fees and expenses under attorneys' fees (above);

- $69,537.09 allowed fees added to the $686,811.70 unchallenged fees totals $756,348.79 allowable fees.

Accordingly, this Court shall GRANT IN PART and DENY IN PART The Kirgans' Motion for Summary Judgment (ECF No. 10) and shall direct payment by the Trust of fees and costs incurred by the Kirgans in the amount of $756,348.79.

---

[8] Except for part of M. Nadel's March 4, 2019 time, the entire billings were related to the appeal. Half of M. Nadel's time was allowed as being related to the instant case: 2.65 hours at $940.00. Expenses of $17.85.
[9] All billings related to the appeal.
[10] Full amount allowed as related to the instant case.
[11] Exhibits 1-4, ECF Nos. 21-1 to 21-4.
[12] 933.5/1,716.1 = .543966.

# CONCLUSION

For the foregoing reasons:

1. The Kirgans' Motion for Summary Judgment (ECF No. 10) is GRANTED IN PART and DENIED IN PART.

   a. This Court shall direct payment by the Trust of fees and costs incurred by the Kirgans in the amount of $756,348.79.

   b. This Court shall deny payment of the remainder $546,618.35 of requested fees as not properly attributable to the Trust.

2. Defendant's Cross-Motion for Summary Judgment (ECF No. 11) is GRANTED IN PART and DENIED IN PART.

   a. This Court shall direct payment by the Trust of fees and costs incurred by M&T in the amount of $940,278.90.

   b. This Court denies some of M&T's challenges to the Kirgans' fees and has partially granted the Kirgans' motion.

3. A separate order follows.

Dated: August 30, 2019.

_____/s/_____
Richard D. Bennett
United States District Judge